J-S61003-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF:  N.N.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  T.J., MOTHER | No. 505 EDA 2017 |

Appeal from the Order Entered January 19, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0001113-2016

*****

| | |
|---|---|
| IN THE INTEREST OF:  N.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  T.J., MOTHER | No. 508 EDA 2017 |

Appeal from the Order Entered January 19, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0001113-2016.
CP-51-DP-0002470-2014

*****

| | |
|---|---|
| IN THE INTEREST OF:  I.N.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF:  T.J., MOTHER | No. 509 EDA 2017 |

Appeal from the Order Entered January 19, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0001114-2016

IN THE INTEREST OF: I.N.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: T.J., MOTHER

No. 510 EDA 2017

Appeal from the Order Entered January 19, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0001114-2016
CP-51-DP-0002471-2014

*****

IN THE INTEREST OF: J.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: T.J., MOTHER

No. 511 EDA 2017

Appeal from the Order Entered January 19, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0001115-2016

*****

IN THE INTEREST OF: J.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA

APPEAL OF: T.J., MOTHER

No. 512 EDA 2017

Appeal from the Order Entered January 19, 2017
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-0002472-2014

J-S61003-17

BEFORE: LAZARUS, J., RANSOM, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED SEPTEMBER 21, 2017**

T.J. (Mother) appeals from the trial court's orders, entered in the Court of Common Pleas of Philadelphia County, involuntarily terminating her parental rights to her three minor children, J.J.S. (born 6/12), and twins, N.N.S. (born 2/11) and I.N.S. (born 2/11) (collectively "Children").[1]   After careful review, we affirm.

In June 2014, the Department of Human Service (DHS) became involved with Mother and her family after reports that Children lacked supervision and medical care, were truant from school, and that their drug addicted maternal grandfather lived in the home.   The family was monitored over the next several months; in October 2014, DHS learned that Mother had left Children in the care of maternal grandfather and had not returned home.   DHS obtained protective custody orders for Children and they were placed in kinship care with maternal aunt.

Children were adjudicated dependent on November 19, 2014.   Mother, who had an admitted mental health diagnosis of bipolar disorder, depression and anxiety, was referred to outpatient mental health therapy in January 2015 in order to help her maintain stability in her life and provide safety and

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] R.S.'s (Father) parental rights were also terminated to Children.   He has not appealed from those termination decrees.

- 3 -

permanency to Children. While Mother participated in 17 therapy sessions and was on medication management throughout 2015 and early 2016, in August 2016 Mother indicated that she felt she had met her goals without being medicated. On August 16, 2016, a therapist discharged Mother from therapy with an after-care plan, prescribed medication list, and index of resources; Mother was advised to reconnect with treatment. Following her discharge, Mother minimally attended treatment and never resumed medication management. Within weeks, Mother began exhibiting threatening behavior toward a friend who was her after-care plan support system.

On November 18, 2016, DHS filed petitions to involuntarily terminate Mother's parental rights to Children and to change the goal to adoption. On January 19, 2017, the court held a termination hearing where DHS social worker, Lakesha Akines, Mother and kinship caretaker, Raven Jacobs, testified. After the hearing, the court entered an order terminating Mother's parental rights to all Children on the basis of 23 Pa.C.S. §§ 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act.[2] Mother filed a timely notice of appeal and court-ordered concise statement of errors complained of on appeal. She presents the following issues for our review:

---

[2] 23 Pa.C.S. §§ 2101-2910.

> (1) Did the trial judge rule in error that the Philadelphia City Solicitor's Office me[t] its burden of proof that Mother's parental rights to her children should be terminated?
>
> (2) Did the trial judge rule in error that the termination of Mother's parental rights would best serve the needs and welfare of the children?
>
> (3) Did the trial judge rule in error by changing the goal to adoption?
>
> In a proceeding to terminate parental rights involuntarily, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for doing so. The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." It is well established that a court must examine the individual circumstances of each and every case and consider all explanations offered by the parent to determine if the evidence in light of the totality of the circumstances clearly warrants termination.

*In re adoption of S.M.*, 816 A.2d 1117, 1122 (Pa. Super. 2003) (citation omitted). *See also In re C.P.*, 901 A.2d 516, 520 (Pa. Super. 2006) (party seeking termination of parental rights bears burden of proving by clear and convincing evidence that at least one of eight grounds for termination under 23 Pa.C.S. § 2511(a) exists and that termination promotes emotional needs and welfare of child set forth in 23 Pa.C.S. § 2511(b)).

We review a trial court's decision to involuntarily terminate parental rights for an abuse of discretion or error of law. *In re A.R.*, 837 A.2d 560, 563 (Pa. Super. 2003). Our scope of review is limited to determining whether the trial court's order is supported by competent evidence. *Id.* Moreover, we can affirm the trial court's decision regarding the termination

of parental rights with regard to any singular subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (en banc).

After reviewing the parties' briefs, relevant case law, and the certified record, we affirm the trial court's order involuntarily terminating Mother's parental rights to Children based on the well-reasoned opinion authored by the Honorable Lyris Younge.

Here, Mother's continued incapacity to perform her parental duties, due to her significant mental health issues which she has been unable to stabilize, causes Children to be without essential care necessary for their physical and mental well-being. Mother consistently left Children unsupervised, blamed others for her circumstances, and often put Children in maternal grandfather's care, a known drug addict. As a result, the court properly terminated Mother's parental rights under section 2511(a)(2). *See* 23 Pa.C.S. § 2511(a)(2) (rights of parents in regard to child may be terminated where "[t]he repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.").

In addition, DHS caseworker Akines testified that Children would suffer no harm if Mother's parental rights were terminated. N.T. Termination Hearing, 1/19/17, at 43. Further, Ms. Akins stated that it would be in Children's best interest if they were freed for adoption. Children have been

flourishing in kinship care with their maternal aunt who provides them with stability as well as their physical, emotional and educational needs; the bond with maternal aunt is undeniable. ***See In re I.J.***, 972 A.2d 5, 11-12 (strength of emotional bond between child and potential adoptive parent is important consideration in "best interests" analysis). Moreover, maternal aunt testified that she was open to having Mother be a part of Children's lives regardless of the court's ultimate decision. N.T. Termination Hearing, 1/19/17, at 70. Accordingly, we conclude that termination was also proper under section 2511(b).

We instruct the parties to attach a copy of Judge Younge's opinion in the event of further proceedings in the matter.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/21/2017

THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: N.N.S. | : | CP-51-DP-0002470-2014 |
| | : | CP-51-AP-0001113-2016 |
| | : | |
| IN RE: I.N.S.. | : | CP-51-DP-0002471-2014 |
| | : | CP-51-AP-0001114-2016 |
| | | |
| IN RE: J.J.S. | : | CP-51-DP-0002472-2014 |
| | : | CP-51-AP-000 1115-2016 |
| | : | |
| APPEAL OF: T.J, Mother | : | Superior Court |
| | : | No. 505, 508 EDA 2017 |
| | : | No. 509, 510 EDA 2017 |
| | : | No. 511, 512 EDA 2017 |
| | : | |

OPINION

**Younge, J.**

This Appeal arises from this Court's Order on January 19, 2017, terminating the parental rights of T⋯a Je⋯s ("Mother"), pursuant to the petitions filed on behalf of the Department of Human Services ("DHS") by the City of Philadelphia Solicitor's Office. Jeffrey C. Bruch, attorney for mother, filed a timely appeal from the January 19, 2017 order terminating mother's parental rights including an attached Concise Statement of Errors, Affidavit of Service, and other related documents necessary to perfect this Appeal.

**Factual and Procedural Background:**

A summary of the relevant procedural history is set forth as follows:

On June 5, 2014, the Department of Human Services (DHS) received a General Protective Services (GPS) report alleging that the children's Mother was not properly supervising N.S., I.S. J.S and their siblings. The report stated the children were observed outside of the home without adult supervision. Mother was not providing the children with the proper nutritious meals. The report alleged on June 4, 2014 Mother took one of the children who suffered a severe asthma attack to the hospital. The report alleged Mother left the other children in the care of I.S., an eleven year-old with little to no food in the home. Mother failed to return to the hospital to retrieve her child.

Mother was not employed and received Temporary Assistance for Needy Families (TANF) benefits for food. The report alleged the children did not attend school regularly and had truancy issues. The report alleged the children's maternal grandfather resided in the home and was a cocaine drug user. The report was substantiated.

On July 5, 2014, DHS visited the home to investigate the allegations of the GPS report. Mother denied the allegations of the GPS report and stated she did not leave her child at the hospital. Mother denied any drugs or alcohol use. Mother stated she received Department of Public Welfare (DPW) benefits in the form of food stamps and has assistance. Mother was diagnosed as suffering from anxiety and depression and received treatment through The Wedge Medical Center. Mother was prescribed medication. DHS observed that the children appeared to be safe. The home had all operable utilities and there was ample food in the home. Mother stated that the house belonged to the children's maternal grandmother and maternal grandfather resided there. Mother stated maternal grandfather did not care for the children.

On August 12, 2014, DHS visited the home. DHS learned Mother had begun attending Welfare to Work program.

On September 9, 2014, DHS visited the home where Mother and all of the children were present. DHS learned N.N.S., I.N.S. and J.J.S. were attending daycare. Mother stated that she continued to attend the Welfare to Work program and would be soon hospitalized for surgery. Mother had made arrangements for the children's care during her hospitalization. Mother stated that she was planning to move and she was willing to accept Family Empowerment Services (FES).

On September 10, 2014, DHS received a GPS report alleging that there were concerns for the children's well-being while in the care of Mother and that there was not food in the home. The children contacted one of their father's and requested food. N.N.S., I.N.S. and J.J.S. went to the home of the paternal great-grandmother of their sibling to eat. Mother was allegedly receiving food stamps and child support for N.S. I.S. and J.S.'s siblings. The report alleged that on September 9, 2014, the house was observed to be in deplorable condition with trash strewn throughout the home. The children were sleeping on the mattresses on the floor and there was no food in the cabinets or refrigerator. Mother became combative when the subject of the home's condition and how it impacted her asthmatic child's health was broached. The report further alleged that Mother left the children with inappropriate caregivers. The home had illegal connections for the utilities. The report was substantiated.

Mother subsequently contacted DHS and stated N.N.S., I.N.S. J.J.S's sibling's father employed discipline with the children's siblings.

On or about September 12, 2014, DHS went to Bethune Elementary School to investigate the allegation of the GPS report. I.N.S. was not present that day and DHS spoke with the children's siblings. The children stated that felt safe in the home and were fed. The children stated their Father disciplined them by hitting them with a belt, but that they were not afraid of him.

DHS scheduled numerous home visits with Mother, however Mother either cancelled the visits or failed to make herself and the children available.

DHS and Mother scheduled a home visit for October 13 2014 and DHS went to the home that day. DHS heard N.N.S., I.N.S, J.J.S. and their siblings inside in home, however no one answered the door. DHS observed one of the children peering out the window and DHS suspected that the

children were in the home without adult supervision. DHS waited at the home and subsequently observed maternal grandfather walking towards the home. Maternal grandfather was belligerent, denied that the children were in the home alone, and refused to allow DHS access to the home to assess the children's safety.

On October 20, 2014, the children's maternal aunt contacted DHS. Maternal aunt stated that Mother was hospitalized on October 13, 2014 for a surgical procedure and left the children in the care of maternal grandfather who was not an appropriate caregiver for the children. Mother had been discharged from the hospital on October 15, 2014 and still had not returned home.

On October 21, 2014, Bethune Elementary school contacted DHS and stated that the children's sibling was crying and stated she did not want to go home.

On October 21, 2014, DHS went to Bethune Elementary School and spoke with the children's sibling who stated Mother had left all the children in the care of maternal grandfather and had not returned home. The home lacked heat and hot water and she wanted to reside with another relative. The children's sibling further stated that on October 20, 2014, she observed maternal grandfather allowing a suspected drug user to take I.S. out of the home.

On October 21, 2104, DHS obtained an OPC for the children. N.N.S., I.N.S. and J.J.S. were placed with maternal aunt.

At the Shelter Care hearing held on October 23, 2014, the Court lifted the OPC and ordered the temporary commitment to DHS to stand. The Court ordered Mother to sign all appropriate re-leases.

At that time, it was reported N.N.S., I.N.S. and J.J.S.'s Father lacked appropriate housing and was residing with an individual who had a conviction for a prohibited offense.

On November 19, 2014, an Adjudicatory Hearing for N.N.S., I.N.S. and J.J.S. was held before the Honorable Vincent L. Johnson, who discharged the temporary commitment to DHS, adjudicated the children dependent and committed them to DHS. Judge Johnson ordered that Mother be referred to Achieving Reunification Center (ARC) and the Clinical Evaluation Unit (CEU) for dual diagnosis assessment and monitoring.

On February 12, 2015, a Permanency Review Hearing for N.N.S., I.N.S. and J.J.S. was held before Judge Johnson. Judge Johnson ordered N.N.S., I.N.S. and J.J.S. remain committed to DHS. Mother was referred to the CEU for a drug screen, assessment and monitoring. DHS and the Community Umbrella Agency (CUA) obtain records of attendance for treatment for Mother. CUA was ordered to follow up with ARC regarding Mother. The Court ordered the children to attend all therapeutic appointments and or receive the needed services.

On May 5, 2015, a Permanency Review Hearing for N.N.S., I.N.S. and J.J.S. was held before Juvenile Master Alexis Ciccone, who ordered that they remain as committed to DHS. Mother was referred to a reunification coach. Mother was ordered to provide documentation of her mental health treatment. Mother's weekly supervised visits could be modified to unsupervised community visits once she had submitted documentation of her compliance with therapeutic services. N.N.S., I.N.S. and J.J.S. were referred to the Behavioral Health Services (BHS) for consultations and evaluations. The Court found that the children's permanency goal was to return to the care of their parent(s).

On August 5, 2015, a Permanency Review hearing N.N.S., I.N.S. J.J.S. was held before Judge Johnson, who ordered that the children remain as committed to DHS. The Court also ordered other supervised visits in the community could be modified by agreement of the parties. Mother failed to attend the hearing.

On February 4, 2016, a Permanency Review hearing for N.N.S., I.N.S. and J.J.S. was held before the Honorable Lyris F. Younge who ordered that they remain as committed to DHS. The Court found that Mother's whereabouts were unknown, and ordered that she sign all necessary releases when she became available. The Court directed CUA to discuss permanency goals for the children.

On May 5, 2016, a CUA Permanency hearing for N.N.S., I.N.S. and J.J.S. was held before Judge Lyris F. Younge, who removed CUA from the case and ordered that the children remain as committed to DHS.

On June 7, 2016 a Permanency Review hearing for N.N.S., I.N.S. and J.J.S. was held before Judge Younge, who ordered the children remain committed to DHS. Judge Younge found Mother was moderately compliant with the permanency plan. There was a concurrent permanency goal for Adoption. Judge Younge ordered DHS move forward with the goal of Adoption for N.N.S., I.N.S. and J.J.S. Mother failed to attend the hearing.

The matter was the listed on a regular basis before judges of the Philadelphia Court of Common Pleas, Family Court Division- Juvenile Branch pursuant to section 6351 of the Juvenile Act, 42 Pa. C.S.A. § 6351, and evaluated for the purpose of reviewing the permanency plan of the child.

In subsequent hearings, the Dependency Review Orders reflect the Court's review and disposition as a result of evidence presented, primarily with the goal of finalizing the permanency plan.

On January 19, 2017, during the Termination of Parental Rights hearing for Mother, the Court found by clear and convincing evidence that Mother's parental rights of N.N.S., I.N.S., J.J.S. should be terminated pursuant to the Juvenile Act. Furthermore, the Court held it was in the best interest of the children that the goal be changed to Adoption.

The appeal of Mother is as follows:

**Issues**
  1) Whether under the Juvenile Act, 42 Pa. C.S. section 6351, and 55 Pa. Code Section 3130.74, in accordance with the provisions of the Federal Adoption and Safe Families Act, 42 U.S.C. Section 671 et seq., reasonable efforts were made to reunite the Mother with her children and whether the goal change to Adoption was the disposition well suited to the safety, protection and physical, mental and moral welfare of the children.

  2) Whether it was proven by clear and convincing evidence that Mother's parental rights should be terminated under Sections 2511 (a)(2) and 2511(b).

**Discussion**

The grounds for involuntary termination of parental rights are enumerated in the Adoption Act at 23 Pa. C.S. § 2511. Under this statute, the trial court must engage in a bifurcated process in which it initially focuses on the conduct of the parent under § 2511(a). *In the Interest of B.C.*, 36

4

A.3d 601 (Pa. Super 2012). If the trial court determines that the parent's conduct warrants termination under § 2511(a), it must then engage in an analysis of the best interest of the child under § 2511(b). *Id.*

In the present case, mother's parental rights were terminated based on §§2511(a), (1), (2), (5), (8) and §2511(b).

In proceedings to involuntarily terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 650 A.2d 1064 (Pa. 1994). The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitation of the truth of the precise facts in issue." *In re J.D.W.M.*, 810 A2d 688, 690 (Pa.Super. 2002).

To satisfy § 2511(a)(1), the moving party must produce clear and convincing evidence of conduct sustained for at least six (6) months prior to filing of the termination petition, which reveal a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. It is clear from the record that for a period of six (6) months leading up to the filing of the Petition for Involuntary Termination, mother failed to perform parental duties for the children. The Court found by clear and convincing evidence that the mother refused or failed to perform her parental duties.

In the instant matter, the social worker testified Mother lacked the ability to meet the needs of N.N.S., I.N.S. and J.J.S. due to her untreated mental health issues, lack of therapy and failure to adhere to medication prescriptions. (N.T. 1/19/17, pg. 34) Mother's Single Case Plan objectives outlined addressing issues of stable housing, truancy and mental health. (N.T. 1/19/17, pg. 21) Testimony of the social worker revealed, Mother failed to be compliant with the goal of stabilizing her mental health. (N.T. 1/19/17 pg. 42) Social worker testified concern regarding Mother's protective capacity to parent. (N.T. 1/19/17, pg. 47) Mother failed to establish a support relationship to assist her with N.N.S., I.N.S. and J.J.S.'s need if reunified. (N.T. 1/19/17, pg. 27)

Mother admitted in her testimony of a diagnosis of depression and anxiety bipolar disorder depression anxiety. (N.T. 1/19/1,7 pg. 59) Mother was unable to provide the Court with any documentation that would substantiate a diagnosis treatment completion from any therapist or treatment program she attended. (N.T. 1/19/17, pgs. 61-62) Mother testified her anxiety was resolved and was not willing to continue therapy. (N.T. 1/19/17, pg. 68)

A parent has an affirmative duty to act in her children's best interest. "Parental duty requires that the parent not yield to every problem, but must act affirmatively, with good faith interest and effort, to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances." *In re Dale A., II*, 683 A.2d 297, 302 (Pa. Super. 1996). In reference to the parental contact, "to be legally significant, the contact must be steady and consistent over a period of time, contribute to the psychological health of the child, and must demonstrate a serious intent on the part of the parent to recultivate a parent-child relationship, and must demonstrate and willingness and capacity to undertake the parenting role". *In re D.J.S.*, 737 A2d 283, 286 (Pa.Super. 1999) (quoting *In re Adoption of Hamilton*, 549 A.2d 1291, 1295 (Pa.Super. 1988)).

In the present matter, during the twenty seven months (27) the children have been in DHS care, testimony of social worker stated Mother's behavior necessitated several changes in the chil-

5

dren's placement on several occasions. (N.T. 1/19/17, pg. 35-38) Furthermore, social worker testified Mother submitted and encouraged others to submit several reports to DHS Commissioner and various agencies to fabricate statements and stories alleging physical abuse of N.N.S., I.N.S. and J.J.S. while in placement (N.T. 1/19/17, pg. 43) The social worker's testimony revealed Mother made in appropriate statements during visits with the children (N.T. 1/19/17, pg. 39) Furthermore, social worker's testimony reveal Mother failed to demonstrate an ability to provide a caregiving role to the children. (N.T. 1/19/17, pgs. 39- 40)

Section 2511 (a)(2) requires that "repeated and continued incapacity, abuse neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for her physical or mental well-being and the condition and causes of the incapacity, abuse, neglect, or refusal, cannot or will not be remedied by the parent. 23 Pa. C.S. § 2511 (a)(2).

Termination of parental rights under §2511 (a)(2) is not limited to affirmative misconduct but may include acts of refusal, as well as incapacity to perform parental duties. *In re A.L.D.*, 797 A.2d 326, 337 (Pa .Super. 2002).

The Court's decision was reflective of testimony which revealed a lack of documentation Mother was receiving treatment for her bipolar depression anxiety diagnosis. (N.T. 1/19/17, pg. 81) Moreover, the Court found Mother's repeated and continued reporting of alleged physical abuse of the children while in placement due to her mental health instability concerning. (N.T. 1/9/17, pg. 81).

§2511 (a)(5) requires that :

> (5)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of parental rights would best serve the needs and welfare of the child.

§2511 (a)(8) states:

> (8)    The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, twelve (12) months or more has elapsed from the date of the removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of the parental rights would serve the best needs and welfare of the child.

The evidence as discussed above pursuant to §2511 (a)(5) and (a)(8), equally support the Court's conclusion to terminate Mother's parental rights.

In order to terminate the parental rights, the party seeking termination must prove by clear and convincing evidence that the termination is in the best interest of the child. 23 Pa. C.S. §2511 (b); *In re Bowman*, 647 A.2d 217 (Pa. Super. 1994). The best interest of the child is determined after consideration of the needs and welfare of the child. The trial court must examine the individual circumstances of each case and consider all explanations offered by the parent facing ter-

mination of this parental rights to determine if the evidence, in the light of the totality of the circumstances, clearly warrant involuntary termination.

When determining the best interest of the child, many factors are to be analyzed, "such as love, comfort, security, security and stability. _In re Adoption of T.B.B._, 835 A.2d 387, 397 (Pa. Super. 2003). Another factor that a court is to consider is what, if any, bond exist for the child. _In re Involuntary Termination of C.W.S.M and K.A.L.M._, 839 A.2d 410, 415 (Pa. Super 2003).

Pursuant to Section 2511(b), the trial court must take account whether a natural parental bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship. _In re C.S._, 761 A.2d 1197(Pa. Super. 2000).

The Court found the social worker's testimony to be credible. (N.T. 1/19/17, pg. 82) The Court stated concern about lack stability of Mother's untreated mental health and long term stability for the children in this particular matter. (N.T. 1/19/17, pgs. 81-82) The Court found convincing the testimony that a parent/child bond exist between the children and their maternal aunt because she acted as their day to day provider and educational surrogate. (N.T. 1/19/17, pg. 80) Hence, the Court concluded the children would not suffer irreparable or detrimental harm if Mother's rights were terminated. (N.T. 1/19/17, pg. 83).

The Trial Court found by clear and convincing evidence that the Department of Human Services met their statutory burden pursuant to 23 Pa. C.S.A. § 2511 (a) (2),(5), (8) & (b) and that it was in the best interest of the children, to change their goal to Adoption (N.T. 1/19/17, pgs. 81-82)

**Conclusion:**

For the foregoing reasons, the Court finds that the Department of Human Services met its statutory burden by clear and convincing evidence regarding the termination of parental rights pursuant to 23 Pa. C.S. §2511 (a),(1), (2), (5) and (8) and §2511(b). Furthermore, the Court finds that its ruling will not cause N.N.S, I.N.S. and J.J.S. to suffer irreparable harm and it is in the best interest of the children based on the testimony regarding the children's safety, protection, mental, physical and moral welfare, to terminate Mother's parental rights.

Accordingly, the Trial Court's Order entered on January 19, 2017, terminating the parental rights of mother, T.... .. Je.... ..., should be properly affirmed.

By the Court:

J.

7

# THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY

## FIRST JUDICIAL DISTRICT OF PENNSYLVANIA

## FAMILY COURT DIVISION

| | | |
|---|---|---|
| IN RE: N.N.S. | : | CP-51-DP-0002470-2014 |
| | : | CP-51-AP-0001113-2016 |
| | : | |
| IN RE: I.N.S. | : | CP-51-DP-0002471-2014 |
| | : | CP-51-AP-0001114-2016 |
| | | |
| IN RE: J.J.S. | : | CP-51-DP-0002472-2014 |
| | : | CP-51-AP-0001115-2016 |
| | : | |
| APPEAL OF: T.J, Mother | : | Superior Court |
| | : | No. 505, 508 EDA 2017 |
| | : | No. 509, 510 EDA 2017 |
| | : | No. 511, 512 EDA 2017 |

---

## PROOF OF SERVICE

I hereby certify that this court is serving, today June 14, 2017, the foregoing Opinion, by regular mail, upon the following person(s):

Bennette Harrison, Esquire
City of Philadelphia
1515 Arch Street, 16th Floor
Philadelphia, PA 19103

Emily Temple, Esquire
Defender's Association of Philadelphia
1441 Samson Street
Philadelphia, PA 19102

Jeffrey Bruch, Esquire
1301 Filbert Street
Philadelphia, PA 19107-2602

BY THE COURT:

Honorable Lyris F. Younge